UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | Date | April 30, 2018 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**    **The Court GRANTS Defendants' Motion to Dismiss**

Before the Court is Defendants Northern Dynasty Minerals, Ronald Thiessen, and Marchand Snyman's ("Defendants" or "NDM") motion to dismiss Plaintiff's First Amended Complaint.  *See* Dkt. # 45 ("*Mot.*").  Plaintiff Victor Diaz ("Plaintiff") opposed, *see* Dkt. # 47 ("*Opp.*"), and Defendants replied, *see* Dkt. # 48 ("*Reply*").  The Court finds the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the moving papers, the Court **GRANTS** Defendants' motion.

I.      Background

Plaintiff brings this class action on behalf of himself and others similarly situated as purchasers of Defendants' securities between September 16, 2013 and February 13, 2017 ("the Class Period").  *See* Dkt. #43, *Corrected First Amended Complaint* ("*FAC*") ¶ 1.  Defendant NDM is a publicly-traded Canadian mineral exploration company, primarily focused on developing the Pebble Project, a copper-gold-molybdenum-silver mineral project in Alaska.  *Id.* Defendant Ronald W. Thiesseen ("Thiessen") is NDM's CEO, and Defendant Merchand Snyman ("Snyman") is the CFO.  *Id.* ¶ 4.  The Pebble Project purportedly contains one of the largest undeveloped sources of copper and gold ore in the world.  *Id.* ¶ 3.  Over $750 million has been committed to developing the Pebble Project, which to date has yet to be commercially developed.  *Id.*  In 2007, NDM and Anglo American PLC ("Anglo"), NDM's 50% co-developer in the Pebble Project, established the Pebble Limited Partnership ("PLP") to develop the Pebble mine.  *Mot.* 2.

In 2011, NDM released an economic analysis prepared by the engineering company Wardrop ("the 2011 Assessment"), in which it estimated that subject to further environmental and social impact analyses and technical study, the Pebble Project might require an initial capital

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | | Date | April 30, 2018 |
|---|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | | |

cost of around $4.7 billion. *Id.* 3. In the 2011 Assessment, NDM also stated that its conclusions were "subject to a number of risks and will require achievement of a number of technical, economic and legal objectives, including … completion of pre-feasibility and final feasibility studies…" *Id.* By 2012, PLP CEO John Shively stated in a nationally-televised documentary, "[i]t's going to be probably at least a $7 billion or $8 billion investment just to get us up and running." *Id.*

In 2013, Anglo exited PLP, taking a $300 million write-down on its ownership stake. *See FAC* ¶ 5. NDM publicly attributed Anglo's withdrawal to its decision to focus on other development priorities. *Id.*

In a 40-F filed with the Securities Exchange Commission ("SEC") on March 27, 2014, NDM stated that "[t]here can be no assurances…that the economics of the new alternative mine models being assessed will demonstrate economics similar to those projected in the 2011 [Assessment]." *Mot.* 3. NDM further stated that the eventual mine "will almost certainly be different from the economic assessment model examined" in the 2011 Assessment, which would "have very limited going-forward relevance." *FAC* ¶ 63.

In NDM's 2016 SEC 20-F Form, NDM publicly stressed the risks associated with their projections, and declared an "inability to establish that the Pebble Project contains commercially viable deposits or ore." *Id.* 4.

In January of 2017, Thiessen made public comments about the impact the Trump election would have on NDM and the viability of the Pebble Project; he called the election a "game changer" and suggested that any lingering environmental study issues would be resolved "within 100 days." *FAC* ¶ 42. The company's stock price surged, and it raised over $37.4 million. *Id.*

The following month, Kerrisdale Capital ("Kerrisdale"), a hedge fund, released a report titled "Cu at Zero" ("the Kerrisdale Report"). *Mot*. 5. Kerrisdale published the report alongside a public announcement that it was shorting NDM's stock; the short-sell report itself served as an investment thesis justifying Kerrisdale's position. *FAC* ¶ 8. The Kerrisdale Report alleged that Anglo walked away from an investment of over $500 million in the Pebble Project after recognizing that the economics did not make sense, and stated that NDM stock was "worthless." *Id.* ¶¶ 10, 44. Kerrisdale's assessments were based on reports from confidential sources, unnamed "technical experts directly involved in the project." *Id.* ¶¶ 46-52. The Kerrisdale Report also largely relied on an unnamed former Anglo engineer "associated with the Pebble Project." *Id.* ¶ 47. The Kerrisdale Report further alleged that NDM actively sought to avoid

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | Date | April 30, 2018 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

receiving cost analyses from Anglo's pre-feasibility study, which contradicted its own 2011 Assessment, in an attempt to avoid having that information reach shareholders.  *Id.* ¶¶ 50, 51.

Plaintiff filed this action on February 15, 2017, alleging causes of action for violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and violation of Section 20(a) of the Exchange Act, alleging that Defendant knowingly made false and misleading statements to deceive investors.  *See generally FAC.*

I.        Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff.  *See Turner v. City & Cty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Through the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress imposed heightened pleading standards on federal securities fraud actions.  *See* 15 U.S.C. §§ 78u-4(b)(l)-(2).  "The PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter."  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002), *abrogated on other grounds as recognized in South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).  "The purpose of this heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading fraud by hindsight."  *Vantive*, 283 F.3d at 1084-85 (quoting *In re Silicon Graphics Sec. Inc. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999)).  To meet the exacting standards of the PSLRA, a plaintiff must "specify each statement alleged to have been misleading," and "the reason or reasons why the statement is misleading."  *Id.* at 1085 (internal citation omitted).

II.        Discussion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | Date | April 30, 2018 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

### A.    Section 10b-5 Violation: False or Misleading Statement

To prevail under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, a plaintiff must establish that there was "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss."  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)). Further, to satisfy Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), meaning a plaintiff must plead the "who, what, when, where, and how" of any alleged misconduct.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted).  The PSLRA goes further, requiring plaintiffs to "plead with particularity both falsity and scienter."  *In re Daou*, 411 F.3d at 1014 (citation omitted).  The PSLRA's specificity requirements "prevent[] a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful."  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (emphasis in original).  Thus, plaintiffs *must* "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omissions is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed."  *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)).  Notably, in evaluating scienter, the Court "must consider all reasonable inferences to be drawn from the allegations, *including inferences unfavorable to the plaintiffs.*"  *Gompper v. VISX*, 298 F.3d 893, 897 (9th Cir. 2002) (emphasis added).

Here, Plaintiff bases his § 10b-5 claim on a number of statements; Defendants move to dismiss on the grounds that Plaintiff fails to plead both falsity and scienter with specificity.  *See generally Mot.*   Plaintiff alleges that each of the statements below was false or misleading for the same reason: "because they failed to disclose that Anglo American and third-party engineers had informed Defendants that: (1) the upfront capital cost for the Pebble Project would be more than double the amount that Northern Dynasty had estimated in 2011; (2) Anglo American had withdrawn from the project since it had determined that the Pebble Project was not economically viable; and (3) Anglo American believed that Northern Dynasty's estimated operating costs were roughly 20% too low."  *Id.* ¶¶ 58, 62, 64, 67, 69.

Plaintiff is not, then, asserting that Defendants made false statements, but rather that they omitted material facts, rendering their statements misleading.  An omission is misleading if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from one that actually exists."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | Date | April 30, 2018 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

*see also Reese v. Malone*, 747 F.3d 557, 569?70 (9th Cir. 2014).  An omitted fact is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *McCormick v. Fund Am. Cos., Inc.*, 26 F.3d 869, 876 (9th Cir. 1994) (quoting *Basic v. Levinson*, 485 U.S. 224, 231?32 (1988)).   Once a party chooses to speak on a subject, they must disclose facts necessary to make the statements "not misleading" in light of the circumstances under which they were made.  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43 (2011).

The Court will detail the relevant portions of each statement alleged to contain a material omission.

### i.        September 16, 2013 Statement

Defendants issued a press release entitled, "Anglo American Withdraws from Pebble Project."  Defendants reported that Anglo "has given notice under the Pebble limited partnership agreement that it is withdrawing from the Pebble copper project in Alaska."  *FAC* ¶ 55.  On a conference call with investors the same day, Thiessen stated, "I mean, we are functionally done with all the heavy lifting and what remains really for the project is the permitting process, so I think moving forward the partnership itself, while there is likely to be downsizing in capacity, we won't miss any of the technical capabilities that will be withdrawn by Anglo when they leave."  *Id*. ¶ 56.  When asked why Anglo had withdrawn from the project, he stated, "And I think, the reason they decided to withdraw was in terms of the timing, again I go back, I think, it simply had to do with their budgeting and cash flow cycling. . ."  *Id*. ¶ 57.

Defendants report that Anglo has withdrawn from the Pebble Project, but they do not state the reason for its withdrawal other than to suggest that it had to do with "[Anglo's] budgeting and cash flow cycling."  *See id*. ¶ 57.  Defendants chose to publicly address Anglo's withdrawal from the project; consequently, they had a duty to disclose information necessary to make their statements about Anglo not misleading.  *Opp*. 10.  Defendants omitted from their statement the reasons for Anglo's withdrawal were that capital costs had ballooned to more than double what Defendants had projected, that Anglo no longer believed the project was economically viable, and that it thought Defendants' projected operating costs were 20% too low.  *FAC* ¶ 58.  Omitting the reasons for Anglo's withdrawal could create "a state of affairs that differs in a material way from the one that actually exists"; it could reasonably lead investors to believe that the project remained economically viable, when in fact its co-developer had pulled out specifically because it was not.  The knowledge that Anglo, who had already invested hundreds of millions of dollars, was so convinced that the Pebble Project was doomed

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | | Date | April 30, 2018 |
|----------|---------------------|--|------|----------------|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | | |

to fail that it walked away, could have altered the "total mix" for investors. Plaintiff has thus sufficiently pled a material omission as to this statement.

        *ii.*      *September 23, 2013 Statement*

Defendants gave a presentation at the Denver Gold Forum in which they stated that the 2011 Assessment determined that the capital cost of the Pebble Project would be $4.695 billion. *Id*. ¶ 59. Defendants did not disclose that multiple other studies had projected a number more than double that cost, which Plaintiff alleges was a material omission. *Id*. ¶ 60.

Defendants, by asserting that capital costs would be $4 billion, created a duty to disclose information necessary to make their statement about the capital costs *not* misleading—such as the fact that multiple other studies done *after* the 2011 Assessment came up with different or higher projected costs. Entirely omitting disclosure of any conflicting studies could have altered the "total mix" for investors; Plaintiff has thus sufficiently pled a material omission as to this statement.

        *iii.*      *December 13, 2013 Statement*

Defendants issued a press release about Anglo's withdrawal, stating:
Northern Dynasty has now reacquired100% ownership and control of the Pebble Partnership. All Anglo American representatives have resigned from the Pebble Mines Corporation Board of Directors. . . . Our primary focus is to select the right partner for Northern Dynasty and the right investor for Alaska, a company with sufficient financial resources and technical capabilities, working experience in the United States and a shared commitment to environmentally sound and socially responsible development. We have little doubt that Pebble will attract major mining company interest in the months ahead.

*Id*. ¶ 61.

Here, Defendants state that "Northern Dynasty has now reacquired 100% ownership and control of the Pebble Partnership," suggesting that they parted ways with Anglo because their "primary focus is to select the right partner," and they have "little doubt" that they will attract investors. *Id*. Omitting the reason for Anglo's withdrawal—that they believed projected capital and operating costs were too low and the project was not viable—and instead suggesting that Defendants proactively reacquired ownership and were simply looking for a better fit, could create "a state of affairs that differs in a material way from the one that actually exists."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | Date | April 30, 2018 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

###### iv.     *March 27, 2014 Statement*

On March 27, 2014, Defendants' annual report filed with SEC Form 40-F stated: Although additional engineering, environmental and socioeconomic studies and data collection programs designed to advance a planned prefeasibility study for the Pebble Project continued from 2011 through early 2013, this work was not sufficiently comprehensive or material to obviate the 2011 PA analyses and conclusions.  However, since the withdrawal of Anglo American from the Pebble Partnership in late 2013 and in light of more recent stakeholder and regulatory feedback, Northern Dynasty has initiated a comprehensive review of previous analyses of the Pebble project, including the 2011 PA and various project components.

*Id.* ¶ 63.

For this statement, Plaintiff points to Defendants' assertion that Anglo's cost studies were "not sufficiently comprehensive or material to obviate the 2011 PA analyses and conclusions" as misleading, because it omitted that Anglo's study, and others, were sufficiently comprehensive to establish that the 2011 Assessment was inaccurate.  *See id.* ¶ 64.  However, as Plaintiff acknowledges, the March 14 statement also included Defendant's conclusion that the "2011 Assessment would have very limited going-forward relevance."  *FAC* ¶¶ 63?64.  Defendants stated, "[T]he cost and revenue inputs require complete updating given the nearly 4 years which have passed since the 2011 PA work was done. For these reasons, any project at Pebble which is ultimately put forward for permitting will almost certainly be different from the economic assessment model examined in the 2011 PA. Therefore the conclusions in the 2011 PA study have very limited going-forward relevance at this time."  *Id.*  The first argument put forth by Plaintiff, then, that Defendant omitted that "the upfront capital cost for the Pebble Project would be more than double the amount that Northern Dynasty had estimated in 2011," fails; Defendants in the same statement revealed that the 2011 Assessment was obsolete.  The March 27, 2014 statement, and any statement made after that date, does not contain a material omission as it relates to the 2011 estimated upfront capital costs.

Plaintiff's other arguments, that  "(2) Anglo American had withdrawn from the project since it had determined that the Pebble Project was not economically viable; and (3) Anglo American believed that Northern Dynasty's estimated operating costs were roughly 20% too low,"  fare better.  *Id.* ¶¶ 58, 62, 64, 67, 69.   As with the prior statements, Defendants discuss Anglo's withdrawal, and the "comprehensive review" of the project necessitated by that withdrawal, without disclosing the reason for it.  Plaintiff has therefore sufficiently pled a

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | Date | April 30, 2018 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

material omission as to the March 27, 2014 statement based on its second and third portions of its argument.

>   *v.      May 15, 2015 Statement*

>   Defendants' annual report filed with SEC Form 20-F on that date stated:
>   To maintain its 50% interest in the Pebble Partnership, Anglo was required to make staged cash investments into the Pebble Partnership aggregating to $1.5 billion (described below).  On September 15, 2013, Anglo gave notice to Northern Dynasty of its withdrawal from the Pebble Partnership.  On December 10, 2013, Northern Dynasty exercised its right to acquire Anglo's 50% interest and consequently holds a 100% interest in the Pebble Partnership and in the Pebble Partnership's general partner, Pebble Mines Corp. (which administers the Pebble Project).  Anglo contributed $573.2 million  . . .  to the Pebble Partnership as of December 10, 2013.

*Id*. ¶ 66.

   Here, again, the Court's analysis is the same as that for the prior statements; Defendants discussed Anglo's withdrawal without disclosing the reason for it.  That omission could have created the impression with investors that Anglo withdrew for its own budgetary or other reasons, rather than because "it had determined that the project was not economically viable," and because "the estimated operating costs" were too low.  *Id*. ¶ 67.  When Defendants publicly discussed Anglo's withdrawal, they had a duty to make their statements not misleading; Plaintiff has sufficiently pled that Defendants' May 15 statement contained a material omission concerning the reasons for Anglo's withdrawal.

>   *vi.      May 2, 2016 Statement*

   Defendants' SEC Form 20-F on that date included the identical statement as was included in its May 15, 2015 annual report.  *See id*. ¶ 66.  Accordingly, the Court's analysis as to this statement is the same as that for the May 15, 2015 statement.

   Defendants argue that Plaintiff's rote repetition of the same allegation after each challenged statement does not "set forth what is false or misleading about a statement, and why it is false."  *Mot*. 17.  While the Court agrees that Plaintiff sets forth three reasons that each statement was false and simply repeats them after each statement ("(1) the upfront capital cost for the Pebble Project would be more than double the amount that Northern Dynasty had

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | Date | April 30, 2018 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

estimated in 2011; (2) Anglo American had withdrawn from the project since it had determined that the Pebble Project was not economically viable; and (3) Anglo American believed that Northern Dynasty's estimated operating costs were roughly 20% too low." *FAC* ¶¶ 58, 62, 64, 67, 69), each challenged statement falls into at least *one* of those categories, if not all three. The Court had no difficulty discerning which of Plaintiff's arguments applied to each statement.

However, Plaintiff's falsity argument faces a more significant problem. The basis for each and every allegation of falsity in the FAC is the Kerrisdale Report, which purportedly details the reasons that Anglo actually withdrew from the Pebble Project. *See, e.g.*, *FAC* ¶ 39. The report itself was derived from "confidential sources," with Plaintiff stating, for instance, that "[a]ccording to Kerrisdale Capital (and its confidential sources), the economic cost of developing and operating the Pebble Project was what drove away prior development partners." *Id*. ¶ 45. Defendants argue that Plaintiff's reliance on confidential sources fails to meet the falsity requirements of the PSLRA. *Mot*. 18. Here, the Court agrees.

Defendants argue that a complaint may rely on confidential sources *only* if it includes other factual information that provides an adequate basis for believing that the defendants' statements were false. *See Zucco Partners, LLC v. Digimac Corp*, 552 F. 3d 981 (9th Cir. 2009). Courts look to the "level of detail provided by confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, and similar indicia." *DeSejournet v. Mohidin, LLP*, No. CV 13-01682, 2014 WL 7723573, at *6 (C.D. Cal. May 21, 2014). Plaintiff argues that the confidential informant pleading standard set forth in *Zucco* is not applicable here, citing *In re Banc of California Sec. Litig*., No. 17 Civ. 118 (AG) (DFMx), 2017 WL 3972456, at *7 (C.D. Cal. Sept. 6, 2017) for the proposition that a short-seller report "doesn't raise the same concerns as a confidential informant" and thus need not meet PSLRA pleading standards. *Opp*. 12. In that case, however, the court held that anonymous short-seller reports *can be* sufficient to establish falsity, when the information revealed is publicly available and verifiable. *See Banc of California*, 2017 WL 3972456, at *7. Indeed, in all of the cases cited by Plaintiff, the short-seller report satisfied the PSLRA because it disclosed its sources or the information was publicly available or verifiable with records and recorded conversations. *See Snellink v. Gulf Resources, Inc*., 870 F. Supp. 2d 930, 938 (C.D. Cal. 2012); *see also McIntire v. China MediaExpress Holdings, Inc*., 927 F. Supp. 2d 105, 114?16 (S.D.N.Y. 2013).

Here, by contrast, the confidential sources whose statements comprise the basis of the Kerrisdale Report are not described with any identifying information and do not disclose their own sources; Plaintiff provides no "adequate basis for determining that the witnesses in question have personal knowledge of the events they report." *Zucco*, 552 F.3d at 995. The confidential

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | Date | April 30, 2018 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

sources are not alleged to have worked for Defendants, nor do they offer any specificity about their job titles, their involvement with the Pebble Project, or corroborating information. Defendants point to the following example to illustrate where Plaintiff's claims are lacking: "[T]o support the claim that the independently prepared 2011 Assessment was inaccurate when it calculated capital costs of approximately $4.7 billion—Plaintiff's central allegation related to falsity—Plaintiffs point to confidential sources who stated that Anglo was 'coming up with 13 billion in capital costs . . to turn it down to 4 is just getting to the art of the ridiculous.'" *Mot.* 19 (quoting *FAC* ¶ 47). As Defendants note, this claim lacks details such as who made these calculations, how they were made, why Anglo's calculations were superior to Defendants', and who at NMD knew about these estimates. *Mot.* 19. The claim is uncorroborated with other information, and any basis for personal knowledge by it source is not pleaded. Claims based on internal reports must allege "at least some specifics from those reports as well as such facts as may indicate their reliability," as this Court has held. *Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, No. 15 CV 8574 (PSG) (MRWx), 2017 WL 3187688, at *17 (C.D. Cal. Aug. 9, 2016). Plaintiff's reliance on Kerrisdale's confidential sources falls well short of this standard.

Because Plaintiff's allegations rely wholly on the confidential sources quoted in the Kerrisdale Report, the Court determines that Plaintiff has not sufficiently plead the required falsity element.

      B.    <u>Scienter</u>

Because Plaintiff fails to sufficiently plead falsity, the Court need not reach Defendants' scienter argument, but it will address it. The Court finds Plaintiff's scienter allegations problematic as well. The PSLRA requires both falsity and scienter to be pleaded with particularity. *See Tellabs, Inc. v. Makor Issue Rights, Ltd.*, 551 U.S. 308, 323 (2007). A plaintiff can establish scienter "by showing deliberate recklessness or 'some degree of intentional or conscious misconduct.'" *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1035 (9th Cir. 2016) (quoting *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008)). The PSLRA requires that the inference of scienter be "strong," and that the Court "take into account plausible opposing inferences." 15 U.S.C. § 78u-4(b)(2)(A); *Tellabs*, 551 U.S. at 323. Although the inference of scienter "need not be irrefutable, *i.e.*, of the smoking-gun genre," it must be "cogent and compelling . . . . A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 323 (citation and internal quotation marks omitted); *see also Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206 (9th Cir. 2016) (discussing the scienter requirement). "The most direct way to show both that a statement was false when made and that the party making the statement knew that is was false is via

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | Date | April 30, 2018 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

contemporaneous reports or data, available to the party, which contradict the statement." *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004) (allowing use of internal reports but requiring "at least some specifics from those reports"); *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (same).

Scienter cannot be inferred on the sole basis of Defendants' motive to improve their business by attracting investment, because otherwise "virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) (citation omitted); *see also In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (same). Plaintiff cannot, then, establish scienter based on the generalized allegation that Defendants had a motive "to cause the price of [NDM] securities to be artificially inflated." *FAC* ¶ 87. Plaintiff does not allege any facts to support intent—"specific facts indicating no less than a degree of recklessness that strongly suggests actual intent"—rather, the FAC asserts that "[t]he Individual Defendants knew or were deliberately reckless in disregarding that the material misrepresentations and omissions contained in the Company's public statements would adversely affect the integrity of the market for the Company's securities." *Id.* Plaintiff supports this conclusion by suggesting that "it is simply implausible that senior management did not see all studies completed by, or provided to, the Company," and that "it is unfathomable that the Individual Defendants were not aware of the cost estimates provided by its primary financial partner." *See FAC* ¶¶ 89, 92.

To bolster its scienter allegations, Plaintiff again relies on the information reported by the confidential sources within the Kerrisdale Report, stating that the report details "how Northern Dynasty executives reacted to news of the unfavorable and significantly higher cost estimate." *Opp*. 18. A confidential source in the report states, "[T]hey [Northern Dynasty] just came in there with, in my view, a hidden agenda of telling a good story. . . . Some people always want to tell a good story to get their bonuses." *FAC* ¶ 48. Plaintiff concludes, "according to people directly involved in the Pebble project, Northern Dynasty knew that the Anglo analysis had found that Pebble was worse than worthless but did everything it could to keep that information out of shareholders' hands." *Id.* ¶ 51. Alleged disagreements between Defendants and Anglo about cost assessments, and a perceived motivation to "tell a good story," do not meet the PSLRA's "strong inference of scienter" requirement without particularized facts supporting an intent to deceive investors.

C.      Section 20(a) Control Liability

In order to prove a prima facie case under § 20(a), a plaintiff must prove: (1) a primary violation of federal securities laws, and (2) that the defendant exercised actual power or control

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | Date | April 30, 2018 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

over the primary violator.  *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).
"Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a
primary violation of section 10(b)."  *Zucco*, 552 F.3d 981 at 990.  The Court's dismissal of the
§ 10(b) claim thus dooms the § 20(a) claim. *See Bonanno v. Cellular Biomedicine Grp., Inc.*, No.
15-CV-01795-WHO, 2016 WL 2937483, at *7 (N.D. Cal. May 20, 2016) ("Here, because
plaintiffs have failed to state a claim for primary liability under section 10(b) of the Exchange
Act, there can be no secondary liability under section 20(a).").  The Court therefore **GRANTS**
the motion to dismiss this claim.

IV.     Leave to Amend

        Whether to grant leave to amend rests in the sound discretion of the trial court.  *See
Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  The Court considers whether leave to
amend would cause undue delay or prejudice to the opposing party, and whether granting leave
to amend would be futile.  *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355
(9th Cir. 1996).  Generally, dismissal without leave to amend is improper "unless it is clear that
the complaint could not be saved by any amendment."  *Jackson v. Carey*, 353 F.3d 750, 758 (9th
Cir. 2003).

        The Court is not convinced that amendment is futile, as Plaintiff could plead with more
specificity the details of Anglo's cost assessments and the basis of knowledge of the confidential
sources on whom Plaintiff relies for each of its claims.  The Court also concludes that Plaintiff
could add facts to support the element of scienter.  The Court will therefore **GRANT** Plaintiff
leave to amend its §10b-5 and § 20(a) claims. *See In re Fusion-io, Inc. Sec. Litig.*, No. 13-CV-
05368-LHK, 2015 WL 661869, at *21 (N.D. Cal. Feb. 12, 2015).

V.      Conclusion

        For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss, with leave
to amend.  Plaintiff is ordered to file an amended complaint consistent with this order no later
than **June 18, 2018**.  Failure to do so may result in dismissal with prejudice.


        **IT IS SO ORDERED.**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-1241 PSG (SS) | Date | April 30, 2018 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |