UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1241 PSG (SSx) | Date | February 22, 2019 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** The Court GRANTS Defendants' motion to dismiss

Before the Court is Defendants Northern Dynasty Minerals Ltd. ("NDM"), Ronald W. Thiessen, and Marchand Snyman's (collectively "Defendants") motion to dismiss Plaintiffs Stephania Nizolek and Cristos Thanos's ("Plaintiffs") second amended complaint. *See* Dkt. # 55 ("*Mot.*"). Plaintiffs oppose the motion, *see* Dkt. # 58 ("*Opp.*"), and Defendants replied, *see* Dkt. # 59 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving papers, the Court **GRANTS** Defendants' motion without leave to amend.

I. Background

A. Factual Background

Plaintiffs bring this class action on behalf of themselves and others similarly situated as purchasers of Defendants' securities between September 16, 2013 and February 17, 2017. *See Second Amended Complaint*, Dkt. # 52 ("*SAC*"), ¶ 1. Defendant NDM is a publicly-traded Canadian mineral exploration company, primarily focused on developing the Pebble Project, a copper-gold-molybdenum-silver mineral project in Alaska. *Id.* ¶ 2. Defendant Thiessen is the CEO of NDM, and Defendant Snyman is the CFO. *Id.* ¶ 3. The Pebble Project purportedly contains one of the largest undeveloped sources of copper and gold ore in the world. *Id.* ¶ 2. Over $750 million has been committed to developing the Pebble Project, which to date has not been commercially developed. *Id.* In 2007, NDM and Anglo American PLC ("Anglo") established the Pebble Limited Partnership ("PLP") to develop the mine. *Id.* ¶ 30. NDM and Anglo each owned a 50% interest in the partnership. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1241 PSG (SSx) | Date | February 22, 2019 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

In February 2011, NDM released the results of an economic assessment of the Pebble Project ("the 2011 Assessment"). *Id.* ¶ 35. It estimated that, subject to further environmental and social impact analyses and technical study, the Pebble Project might require a net initial capital cost of about $4.7 billion. *Mot.* 3:3–6. NDM's press release that announced the 2011 Assessment cautioned that "the ultimate costs may vary widely from the amounts set out in the Preliminary Assessment." *Declaration of Patricia B. Palacios*, Dkt. # 56-1 ("*Palacios Decl.*"), Ex. 11, at 1449.

In September 2013, Anglo withdrew from PLP after investing more than $541 million in development costs. *SAC* ¶ 37. Anglo later announced that it would take a $300 million write-down on its stake in the Pebble Project. *Id.* During an investor call, Defendant Thiessen publicly attributed Anglo's exit to its decision to focus on other development priorities. *See id.* ¶ 61.

In January 2017, Defendant Thiessen publicly commented about the impact the election of President Trump would have on NDM and the viability of the Pebble Project; he called the election a "game changer" and suggested that any lingering environmental study issues would be resolved "within 100 days." *Id.* ¶ 44. The company's stock price surged, and NDM raised over $49 million through a secondary offering of NDM stock. *Id.* ¶ 45.

On February 14, 2017, Kerrisdale Capital ("Kerrisdale"), a hedge fund specializing in short-sale positions, published a report titled "Northern Dynasty Minerals Ltd. (NAK): Cu at Zero" ("the Kerrisdale Report"). *Id.* ¶ 46. Kerrisdale published the report alongside a public announcement that it was shorting NDM's stock; the report itself served as an investment thesis justifying Kerrisdale's position. *Id.* The Kerrisdale Report alleged that Anglo walked away from an investment of over $500 million in the Pebble Project after realizing that the economics did not make sense, and it stated that NDM stock was "worthless." *Id.* The report was based on accounts from confidential sources who were described as "technical experts directly involved in the project." *Id.* The Kerrisdale Report also relied on an unnamed former Anglo engineer "associated with the Pebble Project." *Id.* ¶ 49. It further alleged that NDM actively sought to avoid receiving cost analyses from Anglo's pre-feasibility study, which contradicted the 2011 Assessment, in an attempt to avoid having that information reach shareholders. *Id.* ¶¶ 52–53. Specifically, the Kerrisdale Report stated that Anglo believed that NDM's estimated operating costs were roughly 20 percent too low. *Id.* ¶ 55. On the first day of trading following the publication of the Kerrisdale Report, NDM's stock fell from $3.18 per share to $2.50 per share, or approximately 21 percent, on unusually heavy trading volume. *Id.* ¶ 74.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1241 PSG (SSx) | Date | February 22, 2019 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

On February 17, 2017, NDM published a formal response to the Kerrisdale Report ("the Rebuttal Report"). *Id.* ¶ 54. NDM stated that "no mine planning scenario with a US$13 billion capital estimate was ever finalized, approved or adopted by Northern Dynasty or Anglo American as its 50% partner[.]" *Palacios Decl.*, Ex. 10 ("*Rebuttal Report*"), at 1422. It further stated that "a review of a preliminary draft US$13 billion mine planning scenario by an independent engineering firm commissioned by North Dynasty identified issues with that study and identified savings that reduced the preliminary capital estimate by US$4 billion." *Id.* NDM's response did not stop the stock price decline. On the following trading day, NDM's shares fell more than 25 percent to $1.66 per share, down from $2.26 on February 17, 2017, again on unusually high trading volume. *SAC* ¶ 78.

      B.      <u>Procedural Background</u>

Plaintiffs filed this action on February 15, 2017, alleging causes of action for violation of Section 10(b) of the Securities and Exchange Act ("Exchange Act") and Rule 10b-5 thereunder, and violation of Section 20(a) of the Exchange Act, alleging that Defendants knowingly made false and misleading statements to deceive investors. *See generally Complaint*, Dkt. # 1. Plaintiffs subsequently amended the complaint. *See Corrected First Amended Complaint*, Dkt. # 43.

On April 30, 2018, the Court granted Defendants' motion to dismiss the First Amended Complaint. *See April 30, 2018 Order*, Dkt. # 51 ("*Apr. 30 Order*"). The Court found that Plaintiffs' allegations were insufficient with respect to both falsity and scienter. *See id.* First, the Court held that Plaintiffs failed to adequately allege falsity because "[t]he basis for each and every allegation of falsity in the FAC is the Kerrisdale Report." *Id.* at 9. The Court held that the Kerrisdale Report's reliance on confidential sources failed to meet the requirements of the Private Securities Litigation Reform Act ("PSLRA"), because the sources were "not described with any identifying information." *Id.* The Court also found Plaintiffs' scienter allegations problematic because they were "based on the generalized allegation that Defendants had a motive 'to cause the price of [NDM] securities to be artificially inflated.'" *Id.* at 11. It held that Plaintiffs' allegations that "it is simply implausible that senior management did not see all studies completed by, or provided to, the Company," and that "it is unfathomable that the Individual Defendants were not aware of the cost estimates provided by its primary financial partner" were insufficient to meet PSLRA's requirement for a "strong inference of scienter." *Id.* Finally, finding that "Plaintiff[s] could plead with more specificity the details of Anglo's cost assessments and the basis of knowledge of the confidential sources on whom Plaintiff[s rely] for each of its claims," the Court granted leave to amend. *Id.* at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1241 PSG (SSx) | Date | February 22, 2019 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

On June 18, 2018, Plaintiffs filed a second amended complaint ("SAC"). *See SAC.* Defendants now move to dismiss the SAC. *See generally Mot.*

II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Complaints alleging violations of Section 10(b) of the Exchange Act must also comply with the Private Securities Litigation Reform Act of 1995. Through the PSLRA, Congress imposed heightened pleading standards on federal securities fraud actions. *See* 15 U.S.C. § 78u-4(b)(l)–(2). "The PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002), *abrogated on other grounds as recognized in S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). "The purpose of this heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading fraud by hindsight." *Vantive*, 283 F.3d at 1084–85 (quoting *In re Silicon Graphics Sec. Inc. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999)). To meet the exacting standards of the PSLRA, a plaintiff must "specify each statement alleged to have been misleading," and "the reason or reasons why the statement is misleading." *Id.* at 1085 (internal citation omitted).

III.     Incorporation by Reference

"Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1241 PSG (SSx) | Date | February 22, 2019 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

*accord Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."). Courts may also, however, consider "attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).

The incorporation by reference doctrine permits the court "to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration omitted) (quoting *Silicon Graphics*, 183 F.3d at 986). This doctrine includes "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Id.* The Supreme Court has explicitly noted the importance of considering such materials in evaluating a securities complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Here, Defendants have attached documents that were referenced in the SAC for the Court to consider. Because the Court finds it proper to consider such materials under the incorporation by reference doctrine, and because Plaintiffs do not oppose Defendants' request for judicial notice, the Court **GRANTS** Defendants' request.

IV. Discussion

A. Section 10b-5 Violation: Scienter

To prevail under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, a plaintiff must establish that there was "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1241 PSG (SSx) | Date | February 22, 2019 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

Plaintiffs continue to base the § 10b-5 claim on six statements that they allege were false or misleading. *See generally SAC.* Specifically, Plaintiffs allege that each of the statements was false or misleading because it omitted the fact that "Anglo American and third-party engineers had informed Defendants that: (1) the upfront capital cost for the Pebble Project would be more than double the amount that Northern Dynasty had estimated in 2011; (2) Anglo American had withdrawn from the project since it had determined that the Pebble Project was not economically viable; and (3) Anglo American believed that Northern Dynasty's estimated operating costs were roughly 20% too low." *See id.* ¶¶ 62, 64, 66, 68, 70, 72. Defendants now move for the second time to dismiss Plaintiffs' claims on the ground that they still fail to plead scienter and falsity of the statements with specificity. *See generally Mot.* Because the Court agrees that the SAC's allegations of scienter fail to meet the rigorous standard of the PSLRA, it does not reach Defendants' falsity arguments.

A plaintiff can establish scienter "by showing deliberate recklessness or 'some degree of intentional or conscious misconduct.'" *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1035 (9th Cir. 2016) (quoting *S. Ferry*, 542 F.3d at 782). The PSLRA requires that the inference of scienter be "strong," and that the court "take into account plausible opposing inferences." 15 U.S.C. § 78u-4(b)(2)(A); *Tellabs*, 551 U.S. at 323. Although the inference of scienter "need not be irrefutable, *i.e.*, of the smoking-gun genre," it must be "cogent and compelling . . . . A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 323 (citation and internal quotation marks omitted); *see also Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206 (9th Cir. 2016) (discussing the scienter requirement). "The most direct way to show both that a statement was false when made and that the party making the statement knew that it was false is via contemporaneous reports or data, available to the party, which contradict the statement." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004). However, a complaint relying on the existence of internal reports needs to contain "at least some specifics from those reports as well as such facts as may indicate their reliability." *Id.*

Previously, the Court held that Plaintiffs' scienter allegations were insufficient because a generalized allegation that Defendants had a motive to cause the price of NDM securities to be inflated and reliance on information reported by confidential sources within the Kerrisdale Report both lacked particularized facts to support an inference of Defendants' intent to deceive investors. *Apr. 30 Order* at 11. In an attempt to assuage the Court's concerns, Plaintiffs have amended the complaint with additional allegations to support a finding of scienter: (1) Defendants' Rebuttal Report confirms that Defendants knew of Anglo's $13 billion cost

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1241 PSG (SSx) | Date | February 22, 2019 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

estimate; (2) Anglo's CEO alluded in an industry conference that Anglo's decision to withdraw from the Pebble Project was "an economic one"; and (3) the importance of the Pebble Project to NDM and the company's small size raise a strong inference of scienter. *See Opp.* 17:21–25:2. Plaintiffs claim that these new allegations, together with the contents of the Kerrisdale Report and Defendants' general motive and opportunity to raise capital, adequately plead scienter. *See id.* The Court disagrees.

First, these additional allegations in the SAC do not present any new information about the confidential sources from the Kerrisdale Report. The Court previously found that allegations based on these anonymous sources did not meet the PSLRA pleading requirement because Plaintiffs did not provide an "adequate basis for determining that the witnesses in question [had] personal knowledge of the events they report." *Apr. 30 Order* at 9 (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009)). None of the new allegations cure this defect.

Plaintiffs argue that they have pleaded additional facts that corroborate the accounts of the anonymous sources. First, Plaintiffs contend that NDM admitted in its Rebuttal Report that it was aware of Anglo's $13 billion cost estimate. *Opp.* 17:21–19:5. In support, Plaintiffs point to the following passage in the Rebuttal Report:

> Contrary to [Kerrisdale's] report, no mine planning scenario with a US$13 billion capital estimate was ever finalized, approved or adopted by Northern Dynasty or Anglo American as its 50% partner in the Pebble Limited Partnership ("Pebble Partnership"). In fact, Pebble Partnership staff, led by secondees from Anglo American, recognized the flaws with this work and continued studying development alternatives. Further, a review of a preliminary draft US$13 billion mine planning scenario by an independent engineering firm commissioned by Northern Dynasty identified issues with that study and identified savings that reduced the preliminary capital estimate by US$4 billion.

*Rebuttal Report* at 1422.

According to Plaintiffs, a "reasonable and logical reading" of the report is that Defendants knew of Anglo's $13 billion cost estimate prior to its departure from the Pebble Project. *Opp.* 18:13–15. Plaintiffs argue that this "admission" "give[s] rise to a strong inference that . . . [NDM] was well aware of [Anglo's] $13 billion estimate, and therefore the true reason for [Anglo's] departure." *Id.* 19:2–5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1241 PSG (SSx) | Date | February 22, 2019 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

However, Plaintiffs draw too much from the Rebuttal Report. The Rebuttal Report states that *no* scenario with a $13 billion cost estimate was ever "finalized, approved or adopted" by NDM or Anglo. *Rebuttal Report* at 1422. It explains that a draft study was never finalized because secondees from *Anglo* "recognized the flaws with this work and continued studying development alternatives." *Id.* It is too big a leap in logic to infer based on the *mere existence* of a *preliminary scenario* that Defendants believed that the draft report rendered their previous statements false. Nor is it a sufficient basis to infer that Defendants believed that this was the reason that Anglo exited the project.

More importantly, Plaintiffs have not offered any specific facts regarding this draft scenario. As the Court noted in its previous order, "[c]laims based on internal reports must allege at least some specifics from those reports as well as such facts as may indicate their reliability." *Apr. 30 Order* at 10 (citation omitted). Here, the SAC lacks any particularized facts about the "contents, who prepared them, which officers reviewed them and from whom [Defendants] obtained the information." *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999). Moreover, even if such details were provided, the Court has held that "[a]lleged disagreements between Defendants and Anglo about cost assessments, and a perceived motivation to 'tell a good story,' do not meet the PSLRA's 'strong inference of scienter' requirement without particularized facts supporting an intent to deceive investors." *Id.* at 11.

Next, Plaintiffs argue that the SAC adequately pleads an inference that Defendants were aware of the reason why Anglo left the Pebble Project because of the statements made by Anglo's CEO. *Opp.* 22:1–9. The SAC alleges that on September 24, 2013, in the wake of Anglo's departure, Anglo's CEO Mark Cutifani alluded to the withdrawal from the Pebble Project (but without naming the project specifically) by stating "Our decision was an economic one and not associated with environmental or social issues." *SAC* ¶ 40 (emphasis removed). Even assuming that this passing reference was indeed about the Pebble Project given its timing, the statement is too vague for the Court to infer that Anglo withdrew "because of Pebble's economics, Anglo's economics, or the economics of the mining industry." *See Reply* 6:1–2. Therefore, this statement does not support a "strong" inference of scienter.

Plaintiffs next argue that the SAC raises an inference of scienter as to the Individual Defendants—Thiessen (the CEO) and Snyman (the CFO)—because NDM had only twelve employees and the Pebble Project was NDM's only project. *Opp.* 19:8–21:19. Plaintiffs assert that "Defendants are naive to suggest that senior Northern Dynasty executives did not scrutinize the draft study that served as the basis for their co-developer's departure." *Id.* 19:22–24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1241 PSG (SSx) | Date | February 22, 2019 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

However, "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008). Here, no such allegations have been made. Further, Plaintiffs ask the Court to infer that the Individual Defendants knew, by virtue of their corporate positions, about the basis for *another* company's business decision, without any particularized allegations to support an inference that they were familiar with the inner workings of Anglo.

Finally, Plaintiffs fall back on their argument from the first motion to dismiss that scienter should be inferred based on Defendants' motive to attract investment. *See Apr. 30, Order* at 11. In support, the SAC includes the dates and prices of NDM's secondary stock offerings. *SAC* ¶¶ 106–10. However, the Court has already held that Plaintiffs cannot rely on such generalized allegations to allege scienter, because otherwise "virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Apr. 30 Order* at 11 (quoting *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002)).

In sum, the Court concludes that the SAC does not plead enough particularized allegations to support a "strong" inference of scienter under the PSLRA standard. The SAC has not offered any new information about the confidential sources from the Kerrisdale Report, whose accounts form the main basis of Plaintiffs' allegations of scienter. The fact that Defendants mentioned in its Rebuttal Report the existence of a preliminary $13 billion mine scenario, which was never finalized or adopted by either NDM or Anglo, is insufficient to support a finding of scienter or to corroborate the Kerrisdale Report. The Court does not find that the small size of the company and the significance of the project provide a compelling inference that Defendants knew about the reasons for another company's business decision. And finally, a motive to attract investment is insufficient to plead scienter.

Because the Court finds that Plaintiffs fail to sufficiently plead scienter, it **GRANTS** Defendants' motion to dismiss Plaintiffs' § 10b-5 claim.

B.  Section 20(a) Control Liability

In order to prove a prima facie case under § 20(a), a plaintiff must prove: (1) a primary violation of federal securities laws, and (2) that the defendant exercised actual power or control over the primary violator. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1241 PSG (SSx) | Date | February 22, 2019 |
|---|---|---|---|
| Title | Victor Diaz v. Northern Dynasty Minerals Ltd., et al. | | |

"Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b)." *Zucco*, 552 F.3d 981 at 990. Here, because the Court has dismissed Plaintiffs' § 10(b) claim, they cannot plead secondary liability under § 20(a). The Court therefore **GRANTS** the motion to dismiss this claim.

V. Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). "Where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'" *Zucco*, 552 F.3d at 1007 (citations omitted).

Having previously granted Plaintiffs an opportunity to amend, the Court finds that these deficiencies in the SAC are "a strong indication that the plaintiffs have no additional facts to plead." *Vantive*, 283 F.3d at 1098. Therefore, the Court concludes that any further amendment would be futile and **DENIES** leave to amend.

VI. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss without leave to amend. This order closes the case.

**IT IS SO ORDERED.**